We will hear argument next in Case No. 25-1106, Batiste v. Collins. Mr. Jones? That's correct. May it please the Court, this is Mr. J. Brian Jones, and I'm here on behalf of Mr. Frank Batiste. The issue in this case revolves around whether or not, to give just a little bit of a factual background, when the veteran initially applied for pension, in this case, he checked the box, no, that he did not need aid and attendance. And then later on in 2016, he submitted an aid and attendance examination and the regional office granted the claim. And so we filed for an early effective date, arguing that he made an informal claim back in 2006, which has been continuously prosecuted. And the board in this, you know, it was denied, we went up to the board, and the board essentially held that because he checked no on the box, that he did not clearly identify the benefits sought. But I thought both, first the board and then the veterans court reviewing the board, did not stop at what he checked in that box. And in fact, did look at the medical evidence and concluded, or found, probably is the right term, that that medical evidence did not give rise to a basis for an aid and attendance claim. So that it went beyond the box to do the thing you do to see if a claim not in fact expressly presented is essentially sufficiently lurking in the underlying evidence. That is true. However, as we pointed out in our brief, seems like that the board in that finding was greatly influenced by the fact that the veteran checked no on the box. And that seemed to greatly influence the board and how it read the evidence. Why would that be improper? The question was not sort of a legal question. It was essentially, do you need this kind of daily in-home assistance? And the veteran who says no, who knows more about this presumably than anybody else, is that really not part of the evidence about whether he actually does need it? Well, at the time, first of all, as we pointed out that the evidence that was submitted at the time, first of all, the only records that ever mentioned unemployability, which is basically what the board held, was the social security records. I mean, the records from Newkirk Neurology show that the veteran ambulates with a cane. Records from Dr. Hebert show that the veteran cannot walk without a walker. And in both of those records, there's no talk about whether or not the veteran can't work or not. Social security records indicated that the veteran uses a rolling walker. The same social security records also indicated that the veteran had issues addressing and undressing himself, and that the veteran, when he moved back to Louisiana, had to stay at first with a friend and then stay in a shelter at the VA's expense due to needing assistance. Where is that piece of it in the appendix? Yeah, okay, records from Dr. David Hebert, I think is, let me make sure. Records, well, first of all, records from Newkirk Neurology is appendix 67 through 69. And records from Dr. David Hebert is, let me make sure I have that right, 78 to 82. And also the records where the social security records that indicated the veteran uses a rolling walker, I believe is on appendix page 60. And the social security records that the veteran had issues addressing and undressing himself, and that the veteran, when he moved back to Louisiana, had to stay at first with a friend and then stay in a shelter at the VA's expense due to needing assistance is on APPX 54. Okay, all right. And also, if you take a look at the 2016 grant. Page 54? I believe 54, that's correct. And what document is this? This is the, let me make sure I have that number correct. That is the social security decision which granted the veteran social security. That decision starts on 48. 48, and so I think if you get on 54, it talks about, it talks about, I'm not sure. On 54, I think it talks about dressing and addressing himself. He had to stay at first with a friend. And then on APPX 60 of those social security records, it says he uses a rolling walker. And what we pointed. Are you saying that the veterans court and the board mis-evaluated all of the evidence of record connected to the 2006? Well, I think our argument is, and this is what we argued in our brief, is that if the board wouldn't have gotten focused on the fact that he checked no on the box, which we think effectively then precludes him from making a claim, and that seemed to be, especially if you go to APPX 12 in particular, the board basically said on APPX 12 when it decided the claim, it basically only cited, if you take a look at the first paragraph, it only cited the fact that he checked off the box as to why it couldn't be a claim. And didn't cite any of the case law that we cited in our brief. And if you also take a look, I think in APPX 13 and 14, when the board was then analyzing the evidence of whether or not it's really a claim about unemployability, it's in response to, because it's in response to a JMR, because originally the board had said that, hey, the veteran can make a Q claim, and then it was sent back about, well, if you suggested he could make a Q claim, then are you really finding that there is evidence that he needed aid and attendance? And so it's in response to that would be our position on that. So just getting back to the Veterans Court decision that we're reviewing today, it says that the board was correct that even though there's a duty to sympathetically agree to veterans' filings, that the fact that he indicated he needed a walker or a cane wasn't enough to establish that he was seeking this form of aid because he didn't put forward any evidence that he was blind or otherwise incapacitated such that he needed assistance with activities of living. What we point out is that when the veteran himself filed his claim in 2016, he submitted an aid and attendance examination, which was, I think, is it 33 to 33? It was 2016. Right. I'm talking about 2006. But the point that I'm making, Judge, is that the evaluation found that the veteran needs assistive devices for ambulation out of home with a walker, and he used a cane while in his house. And then on December 13, 2016, entitlement to special monthly pension based on the need for aid and attendance was granted. And what we then argued in our brief is that this is the same factual basis as to what he submitted in 2006. Because in 2016, assistive devices for ambulation out of home with a walker, we have evidence that he uses a rolling walker, uses a cane while in his house. We have evidence that says he uses a cane while in his house. So it would be inconsistent with the- I thought there was more statements and evidence with the 2016 claim beyond just saying I need a walker or a cane. Let me pull up the aid and attendance examination and see. I can't address that in particular. Yeah. I'm sorry. The aid and attendance exam was on 36 to 37. I mean, I guess maybe you could say, you know, he checked off. Is the claimant able to feed himself? The doctor said yes. But he said sometimes he has increased arthritis in his hands and impairs his ability to eat. But that's by history. You know, you have- I guess those are more specific items that were not identified in the 2006 claim. I think- let me see if- yeah. And it doesn't really explain within the decision itself on APPX 35 exactly what it is. I mean, I guess one could argue that except for the doctor checked off yes in terms of able to feed himself. Another question we have to deal with is, you know, what issues do you probably have jurisdiction to consider? Well, I think that the question would be- What is the purely legal question? I think that the legal question is that if- does the veteran- is it- when identifying the benefits sought, you're required to fully sympathetic the claim and he doesn't have to make it explicit. And so the question is, does the board's finding that- does the board's finding that the fact that he checked off the box, the meeting no, does that preclude him from making a claim or not? And is that consistent with the case law and regulations of fully sympathetically developing the claim and whether or not a claim has to be made explicit? And that would be the legal issue if we could see it. You're into your rebuttal time. You can use it now or save it. I'll save it. Okay. Good morning. May it please the court. As the court said in Ellington v. Peake in 2008, the interpretation of the contents of a claim for benefits is a factual issue over which we do not have jurisdiction. The question here is, is there a legal question for the court? What was the case that you cited? That was Ellington v. Peake, 541 F.3D 136. What was the case? Ellington v. Peake. What was the site of the case? Again, the interpretation of the contents of a claim for benefits is a factual issue over which we do not have jurisdiction. And what's the site? Ellington v. Peake. Sorry, the citation, 541 F.3D 1364. And again, the question is, is there a legal question before this court? What's being put forward to this court is to determine whether or not in 2006 the evidence should be weighed in a certain way to indicate that there was a claim for special monthly compensation based on a need for aid and assistance. This is a factual issue that this court does not have jurisdiction over. Well, so I think this is my understanding of the way this usually works. We can't review factual determinations. We can't review applications of flawed effects. So the other side has to identify some legal question that was decided. And typically that means, almost always means, that the Veterans Court opinion on its face indicates the resolution of a legal question. But not quite always. There are also circumstances where when you look at what the Veterans Court did, one can infer an implicit resolution of a legal question. And here, the only legal question at issue is sympathetic reading or a no answer or disregarding anything but the no answer and not looking at all at the underlying medical records. And at least we can take a peek at whether the answer to the question, what do those medical records show, is sufficiently apparent even at the level of ambiguity to require that in a sympathetic reading one have found it to be sufficient. And that I think is how, there are a bunch of steps in that, how the veteran here gets to let's look at the records. And I realize it's quite a high burden for a veteran to, a heavy burden to carry here. Why isn't there enough in the 2006 records to have at least made ambiguous whether there really was an aid and assistance problem? First, I'll just address part of the earlier part of that question before and then I will come back to what in 2006 was ambiguous. Because firstly, in order to get to what you said, if there was this ruling in the Veterans Court decision that the no was itself legally dispositive or somehow stopped the need to go to aid and assistance, that might be a legal question. But that's not the holding that happened here. The Veterans Court said, well, the board, looking to the board's decision, they didn't just look to this note. They looked to the evidence to determine that there was no claim here. What was implicit in the medical records? What the appellants point us to was the need for use of a cane or walker. There was also the reference, which I have not been able to find, to something about need for help in dressing in the Social Security document from October 2006. And we were pointed to, I think, appendix page 54. And my eyes are not picking up that reference to dressing. I don't have appendix 56 in front of me. I would happily take a look at it. We can check. That was the one thing that seemed to be standing out. It's something about standing with a friend who needed help dressing. And I could just be missing it. The rest is cane and walker. And there's more later when it comes to 2016. The evidence in 2016 is the evidence that the board points to to say this is why you get this benefit. There was no question there. It is clear evidence that there was need of assistance in bathing and tending to hygiene needs, need of assistance in preparing meals, unable to prepare meals on his own, sometimes need of assistance to eat. And also, I believe, on appendix 37, there was a note in box 33 regarding inability to accomplish daily living items such as buying groceries, paying bills, and unable to drive itself. These are the evidence that the board pointed to when it granted on the 2016 claim. The question simply is, was any of this in the 2006 claim? Both the board and the Veterans Court and our brief have gone through this and said, well, it's not there. But even if to an element there was, we're then talking about the weighing of evidence. We're then talking about getting into the factual question of, do we have jurisdiction to say this is something that is a legal question that this court can look at? And in this situation, it's- Would you read the Veterans Court decision as relying on two things? One was checking the box now. And then two, that all that the veteran identified in 2006 was the need for using a walker or cane. It's just those two items. I believe that what they're relying on is not just the two items, but the lack of a third, fourth, fifth item. Those are the items they can see in the record that are being brought to them as the argument by the appellant at the Veterans Court stage, who has the burden of showing that there was something that requires the Veterans Court to overturn the board. And the board had looked at these items and said, no, and there was nothing else the appellant pointed the Veterans Court towards. To the extent that, again, I'm first learning about it potentially now, but if there was additional evidence that was about bathing, that evidence was not presented to the Veterans Court, and therefore there's a waiver exhaustion question there that would apply in this situation. But it's not just these questions. What the Veterans Court is looking at is not just the factual issues, but the Veterans Court is applying this court's precedents, applying the statutes, applying the regulations to the facts of this case to say, is this legal error? Or is this a factual error of the board that I can review? And so that's the decision we are now reviewing. It's not the board's factual determination, but was the Veterans Court, as a matter of law, wrong in finding that the board did not commit those errors? Right. The reason I started where I did was that much of the Veterans Brief is really asking us to review the board. That's not our job. We can only get to the underlying evidence at all in a very limited way, has some indication that what the Veterans Court did may have been implicitly, if not expressly, affected by a legal error. That's a higher standard. Exactly. And I think that to this court in 2020 looked at this question of how far, at what point does this need, this burden to assist attached to a claim? At what point does the VA have to go beyond what's being put in front of it to say there might be something more here? And in the Murphy v. Wilkie case of 983 F3rd 1313, what this court explained that the proper inquiry for the VA is to determine what diagnoses, conditions, or illnesses can reasonably be understood as included in the request. And went on to say, we emphasize that this inquiry does not require that the VA embark on a fishing expedition to explore any potential condition, which the record may support as a basis for the benefits, nor does the VA have to attempt to read the mind of the claimant. The VA need only explore those conditions which may be reasonably considered within the scope of the claimant. The court added emphasis to the word reasonably. And that's exactly what we sort of have here. In this situation, the VA was presented with a claim for one claim in 2006. It was told that the veteran needed a walker or a cane to get around. And when asked directly in the forms, are you looking for special monthly compensation? Do you need aid and assistance? The veteran accepted, no. This is a situation where the VA, while some obligations were attached, the obligation that's being set here is to ignore the no, essentially, to look past that, and to look at a record that has no evidence showing aid and attendance, and somehow come to an aid and attendance bill. Hypothetically, since I haven't been able to identify at 854 what the appellant's counsel claims to be in that, but what if in that Social Security decision there are very clear statements and findings by the Social Security Administration that this is a person that did need a lot of aid and assistance to do daily household things? In spite of the fact that perhaps in 2006 the only thing the veteran identified was that he used a walker or a cane, would those kinds of statements and analyses in a Social Security decision be something that the VA would need to look at and consider and evaluate above and beyond his express statement that he uses a walker? I think there's, again, I haven't seen these statements, but hypothetically in a situation where the VA is presented with evidence that a person needs specifically aid and attendance, there's definitely going to be a situation in that possibility where the VA's duty applies. This is a paternalistic system. The VA is supposed to help veterans with their claims. I don't believe that's the situation here. I don't believe anyone's pointed to, so far to my knowledge, before the board, before the Veterans Court, that there was this specific discussion of aid and attendance, a specific discussion of inability to do daily tasks without assistance of another human being. And to bring that into context, aid and attendance is not simply just something that the VA can hand out almost willy-nilly. It is a statutory regulatory requirement. There are decisions that are laid down in the statutes as to when VA can give this out, and VA cannot simply go beyond what is being told. Aid and attendance is not walking with a cane or with a walker will not hit those marks. Instead, the aid and attendance statutory language requires evidence such as bedridden is one example, blindness is another example, and then it goes through several other examples, such as inability to dress oneself, inability to feed oneself, difficulty with daily tasks. That's the level of information that we're looking for in this situation. In this situation, the board looked through it, couldn't find it, but gave the earliest date possible it could do, based on 38 U.S.C. 5110, and then the date that the claim for this first rose was first presented to the VA, which was the 2016 claim. And the court of veterans claims looked at and determined that there was nothing else to be done here, that everything had been done correctly. The board had not simply looked at no and moved on. The board had looked at the no, considered, because, again, it's part of the record. It's something the board must at least consider, but also looked to the evidence to determine, well, hang on a second. Was this actually here? Could the no have been an error or a misunderstanding? And determined, no, there's simply nothing in the record in 2006 that leads us to this degree. The argument here today, I feel, is the VA must comply with its duty to sympathetically agree to veterans' violence. I assume you would say, well, that's what happened here. They invoked the board and the veterans' court. It's expressly referred to that duty and applied it. I guess, in your view, that would lead to an affirm rather than a dismissal. Well, we, first of all, as we've put in our briefs, we think a dismissal and lack of jurisdiction is the correct move here because there is no actual legal question. The question is whether there's this new legal requirement of not putting a no. It's simply just not what the result below. We can't appeal a decision that the lower court did not actually decide, and they never reached that point. But to the extent it's not a dismissal of jurisdiction, we would say that the court below should be affirmed as well. Unless the court has anything further, thank you for your time. Thank you. Does the court have any questions for me? Do you have the statement at 854 that you cited to in the Social Security Administration decision that there was some clear findings that the client needed assistance? I couldn't find it. Yeah, that's what I was trying to look for. Is it possible that you were referring to a statement which is on page 14 of the Social Security Statement and it's taking more time to dress himself? Yes, yes, yes, yes, yes. That would be it. I probably got the numbers slightly off. Play with possibilities because of your number four. So four is close to 14. This is 14 of the original document. Yeah, and it may be possible when I was preparing the brief, I may have got a little numbers off. Where on A61 are we? Last five lines. Last five. Six lines. I will also point out too that the... Did you raise this passage from A61 to either the board or the veterans court? I know you're raising it to us now during this oral argument, but was this presented to either the board or veterans court below? Yes. Do you have a record of that? I don't think I attached a copy of my brief to the record. Yes, I know I don't. I will also point out something real quick. On using the rolling walker and the walking with the cane, I think that one could infer, in fact, if you take a look at the aid and attendance examination, that an individual who has trouble with ambulation and balance probably would need assistance with bathing and so on and so forth. In fact, I think that's what the aid and attendance exam that was submitted found, so I wish to point that out for your consideration. As it happens, this page 61 statement says, unable to bathe himself but taking showers. Yes. Hard to get in and out of a tub, but walking into a shower, different story. Yeah, yeah, yes. Okay. Thank you. Thanks to all counsel and cases submitted. Thank you very much, George.